The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Bost and arguments presented on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the prior Opinion and Award. The Full Commission does, however, make a number of modifications to the findings of fact, conclusions of law and award rendered by Deputy Commissioner Bost.
* * * * * * * * * * * *
As permitted by the Commission the parties in October 1995 took the deposition testimonies of the following health care providers who have examined Plaintiff: Jacob M. Lehman, M.D., Karl G. George, D.C., Eugene Z. Haller, D.C. and David N. DuPuy, M.D.
At the October 27, 1995 additional hearing the parties stipulated to 18 pages of additional medical records.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. The plaintiff sustained the injury of which he complains on March 19, 1992 at a time when he was working on a project for the defendant-employer in the State of New York, at a location in Nassau County approximately twenty-five miles from his residence in Smithtown, New York. Such injury grew out of and in the course and scope of the employment of plaintiff by defendant-employer.
2. Prior to the project in Nassau County, New York in which the plaintiff was working when he was injured on March 19, 1992, the plaintiff had worked on another project several months before in the State of New York for the defendant-employer at a time when he was also living and residing at Smithtown, New York.
3. On March 19, 1992, the plaintiff was working for the defendant-employer on a project in the State of New York, was injured in the State of New York, was residing in the State of New York, and had contracted with the defendant-employer to do the project at which he was working when he was injured in the State of New York. His average weekly wage was $1,000, yielding a compensation rate of $426 per week.
4. The defendant-employer's principal place of business at said time was located in High Point, North Carolina. It is generally accepted that an employer's principal place of business is that location where the books and records of account of the business are regularly maintained. In this case, the only evidence of the principal place of business of Mangum Building Systems was the payroll ledger introduced by Plaintiff without objection, which indicated the following:
 Name of Employer: Mangum Building Systems Street: 108 Old Thomasville Road, Suite 103 City and State: High Point, NC Zip Code: 27260
Once this evidence was received into evidence it was incumbent on Defendants to introduce evidence rebutting the natural presumption that a business's principal place of business is that place where its books and records of account are regularly maintained and the presumption that the written books and records of account speak the truth as to the matters reflected therein.
5. Plaintiff, born February 28, 1945, has a 32-year work history from 1960 involving employment primarily as a commercial construction carpenter with some foreman or job superintendent experience. He has a high school education with some college courses. His employment involved performing heavy physical exertion duties with frequent lifting and carrying materials weighing up to 100 pounds, frequent bending, climbing, and substantial overhead work. He was in his usual state of good health prior to the events of March 19, 1992.
6. Plaintiff's duties on said occasion included general carpentry and supervisory responsibilities.
7. On March 19, 1992, Plaintiff was involved in an altercation with Alan J. Ehl, the local carpenter's union business agent. Mr. Ehl lowered his shoulder and "rammed" the Plaintiff, shoulder to chest, causing him to be pushed against a wooden construction partition on the site. The Plaintiff experienced immediate head, left arm, neck, and back pain, and shortly thereafter, a loss of grip strength in the left hand.
8. Mr. Ehl's batteries against plaintiff caused plaintiff to strike the back of his head, his shoulders, his neck, his middle or thoracic area of his back, and his lower or lumbar area of his back against the wall. Plaintiff had an immediate onset of pain in these areas and was unable to continue working due to these injuries beginning March 19, 1992.
9. On March 30, 1992, Plaintiff saw Dr. Karl G. George of East Setauket, New York. Plaintiff was treated by Dr. George from March 30, 1992 through December 20, 1993. Chiropractor George determined that Plaintiff reached maximum medical improvement on November 17, 1993, and assigned a 40% permanent partial disability to Plaintiff's spine.
10. On March 19, 1992 Plaintiff sustained injuries to his head, shoulders, left arm and hand, neck and his entire back by accident arising out of and in the course of his employment for defendant-employer.
11. Plaintiff on or about April 1992 notified defendant Harleysville of his injury and treatment by Dr. George and requested Harleysville to authorize or pay for his medical treatment. Harleysville refused to voluntarily recognize Plaintiff's worker's compensation claim or to pay for any medical compensation for Plaintiff.
12. Plaintiff was seen by Dr. Eugene Z. Haller, also a chiropractor, on February 16, 1994.
13. Plaintiff was seen by Dr. Jacob M. Lehman on August 23, 1994 and August 10, 1995. He assigned a disability rating of 40%, however he was unaware of the North Carolina Industrial Commission's Guidelines.
14. Plaintiff was seen on two occasions by Dr. David N. DuPuy of Charlotte Orthopedic Specialists for purposes of independent medical evaluations on March 21, 1994 and September 25, 1995. On both visits, Dr. DuPuy noted "classic" signs of symptom magnification with no neurological deficit, inconsistent voluntary motor responses and normal involuntary motor responses, brisk reflexes, good muscle tone, no muscle spasm, and no other objective sign of injury whatsoever.
15. In light of his findings of positive signs of symptom magnification, and no objective signs of any injury whatsoever, Dr. DuPuy assigned the Plaintiff a permanent partial disability rating of five percent under the guidelines promulgated by the AMA and the North Carolina Industrial Commission.
16. Following his examination of Plaintiff, Dr. DuPuy found that Plaintiff, as of 21 March 1994, could have returned to work immediately in his supervisory capacity, restricted from heavy work for 3 to 4 weeks only because of the deconditioning that would be expected after two years of not working. More importantly, Dr. DuPuy indicated that plaintiff was capable of such work from early on.
17. By reason of his injuries sustained by accident on March 19, 1992, Plaintiff was unable to earn wages in any employment during the period March 19, 1992 through November 11, 1993.
18. By reason of his injuries sustained by accident on March 19, 1992, Plaintiff suffers from chronic myofascitis of his cervical and thoracic back muscles, as well as permanent injury to the muscles and nerves in the cervical, thoracic and lumbar areas of his back resulting in constant pain, and to the muscles and nerves of his left arm and hand, resulting in left hand weakness.
19. Plaintiff alleged that by reason of his injuries sustained by accident on March 19, 1992, he was prevented from being able to return to the regular duties of a commercial construction carpenter for defendant-employer or any other employer and earn the $1,000.00 per week in wages he was earning at that time in the same or any other employment.
20. Plaintiff alleged that by reason of his March 19, 1992 injuries, he in the period November 11, 1993 to at least October 27, 1995 continued to suffer from constant mild to moderate pain in the muscles of his back which grows worse with any sustained use of his back muscles or prolonged standing or walking or frequent bending or overhead use of his arms or lifting objects weighing over 25 pounds.
21. Beginning November 12, 1993, Plaintiff had improved from his March 19, 1992 injuries to the point where he was capable of engaging in light to medium work activities, that is, no lifting over 25 pounds, no prolonged periods of standing or walking, only occasional bending, no overhead work. By November 12, 1993 Plaintiff became capable of earning minimum wages of $170.00 per week (40 hours x $4.25 per hour) per week in some employment and by 21 March 1994 plaintiff was capable of returning to his old job at his former wages.
22. The videotape of the Plaintiff stipulated into evidence at the October 27, 1995 hearing gives helpful insights as to Plaintiff's injuries, physical capabilities, and participation in the construction of his log home. In it, plaintiff can be seen actively and vigorously working with two other men carrying and positioning large logs on the construction site. At various points on the tape, plaintiff is seen turning his neck from side to side to look behind him as he drives a front-end loader, which not only contradicts plaintiff's testimony that he finds driving a car difficult because of an inability to turn his head without difficulty, but it also contradicts the range limitations recorded by plaintiff s health care providers before and after July 27, 1995. Plaintiff is plainly seen carrying a log on his shoulder and bending straight-legged at the waist to unfasten a strap on a log while two other workers look on.
23. The Full Commission finds that the Plaintiff has not made a reasonable effort to seek employment and the evidence of record does not indicate that it would be futile for Plaintiff to seek employment when considering the Plaintiff's age, work experience, education and physical limitations.
24. Plaintiff reached maximum medical improvement from his injuries on November 17, 1993 and he was capable of earning wages on and after that date.
25. Based upon the evidence of record, taking in to account the varying medical opinions relating to permanent disability, the Full Commission finds that as a result of plaintiff's compensable injury, he has sustained a ten percent permanent partial disability of his back.
* * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On March 19, 1992, an employer-employee relationship existed between Defendant Mangum Building Systems and Plaintiff Brian A. Weber. On that date plaintiff suffered an on-the-job injury by accident growing out of and in the course and scope of his employment with Defendant Mangum Building Systems. G.S. §97-2(6).
2. Although Plaintiff was working for Defendant Mangum Building Systems in New York State and under a contract of employment entered into in New York State, the principal place of business of Mangum Building Systems was in High Point, North Carolina, making the incident subject to the North Carolina Workers Compensation Act. G.S. § 97-36 and Thomas v. OverlandExpress, Inc., 101 N.C. App. 90, 398 S.E.2d 921 (1990)
3. Plaintiff's average weekly wage from defendant-employer on March 19, 1992 was $1,000.00, yielding a compensation rate of $426.00. G.S. § 97-2(5).
4. As a result of his accidental injuries sustained on March 19, 1992 Plaintiff was temporarily totally disabled from March 19, 1992 through November 11, 1993. G.S. § 97-2(9) and G.S. § 97-29.
5. Based upon the 10% rating of his back, plaintiff is entitled to permanent partial disability compensation at the rate of $426.00 per week for a period of thirty weeks, commencing November 17, 1993. G.S. § 97-31(23).
6. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident. G.S. § 97-25.
7. On November 17, 1993 Plaintiff reached maximum medical improvement from his accidental injuries giving rise hereto and the medical treatment rendered therefor and was capable of earning wages. G.S. § 97-2(19) and G.S. § 97-25.
8. After November 17, 1993, and accounting for her permanent partial disability, plaintiff was capable of earning the same wages she previously earned in her former position with defendant-employer. Therefore, plaintiff is not entitled to further compensation for temporary total disability as a result of the injury by accident giving rise to this claim after 17 November 1993. G.S. § 97-29. Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993),accord, Stone v. G G Builders, No. COA 95-378 (March. 1996).
9. The Worker's Compensation Act does not encourage a claimant to stay out of work upon reaching maximum medical improvement as plaintiff suggests. Instead, the courts have required a showing of reasonable effort to obtain employment as a prerequisite to finding disability. The Court of Appeal's decision inRussell v. Lowe's, 108 N.C. App. 762, 425 S.E.2d 454
(1993), places an additional burden upon the claimant which precludes him or her from staying out of work indefinitely. InRussell, plaintiff testified that he sought work at various locations after obtaining maximum medical improvement, but was, according to the Deputy Commissioner, too vague in his testimony about work he had sought and . . . unable to name the exact names of employers to whom he had made application." Id. at 456. In affirming the denial of benefits by the Deputy Commissioner and Full Commission, the Court of Appeals held:
 There is no dispute between the parties, and the record evidence establishes, that Russell is capable of doing some work, that he does not have a job, and that seeking employment is not futile because of some pre-existing condition. Therefore, the only question is whether Russell presented sufficient credible evidence that he made a reasonable effort to obtain employment. He testified, and the Commission found, that he sought work at "various locations." Specifically, Russell testified that he made seven or eight job applications and was refused employment in each instance. The Commission, however, rejected this testimony as not credible on the grounds that Russell "was unable to name the exact names of employers to whom he had made application nor the dates upon which he had made application nor for what jobs he had applied . . . Because the Commission is the sole judge of the credibility of the witnesses and has rejected as not credible Russell's evidence that he made a reasonable effort to obtain other employment, Russell did not meet his burden of showing the existence of a disability.
It should be pointed out that the plaintiff in this case does not take issue with the Deputy Commissioner's finding that plaintiff was capable of earning reduced wages in some employment as of November 12, 1993. Thus, it follows that plaintiff is not contending that it would be futile for him to seek employment because of some pre-existing condition.
10. Counsel for plaintiff is entitled to a reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff herein.
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the Deputy Commissioners holding and enters the following:
AWARD
1. Subject to the attorney's approved, herein defendants shall pay Plaintiff temporary total compensation at the rate of $426.00 per week from March 19, 1992 through November 17, 1993.
2. Subject to the attorney's fee approved herein, Defendants shall pay permanent partial disability benefits at the rate of $426.00 per week for thirty weeks, commencing November 17, 1993.
3. Defendants shall also pay expert witness fees as follows: $300.00 to Jacob M. Lehman, M.D.; $325.00 to Karl G. George, D.C.; $150.00 to Eugene Z. Haller, D.C.; and $300.00 to David N. DuPuy, M.D.
4. Defendants shall pay for all medical treatment made necessary by reason of the injury by accident in accordance with rules established by the Industrial Commission.
5. Defendants shall pay a reasonable attorney's fee of twenty-five percent of the compensation awarded herein to counsel for plaintiff.
6. Defendants shall pay the costs.
 S/ _______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________________ COY M. VANCE COMMISSIONER